# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE: | Chapter 11 |
| CHICAGO SOUTH LOOP HOTEL OWNER, LLC, | Case No. 22-02595 |
| Debtor. | Honorable LaShonda A. Hunt |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on Thursday, March 23, 2022, at 11:00 a.m., we shall appear before the Honorable Judge LaShonda A. Hunt, or any judge sitting in her stead, **either** in courtroom 719 of the Dirksen Federal Building, 219 South Dearborn Street, Chicago, Illinois 60604, or electronically as described below, and present the MOTION TO DISMISS CHAPTER 11 BANKRUPTCY CASE, OR IN THE ALTERNATIVE, FOR APPOINTMENT OF CHAPTER 11 TRUSTEE a copy of which is attached.

**All parties in interest, including the movant, may appear for the presentment of the motion either in person or electronically using Zoom for Government.**

You may appear electronically by video or by telephone.

**To appear by video**, use this link: https://www.zoomgov.com/. Then enter the meeting ID and passcode.

**To appear by telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and passcode.

**Meeting ID and passcode**. The meeting ID for this hearing is **161 165 5696**, and the passcode is **7490911**. The meeting ID and passcode can also be found on the judge's page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without calling it.

|  |  |
|---|---|
| Dated:  March 8, 2023 | U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR MORGAN STANLEY BANK OF AMERICA MERRILL LYNCH TRUST 2013-C13, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2013-C13, by and through its special servicer, RIALTO CAPITAL ADVISORS, LLC |
|  | By:   /s/ Aaron Davis  <br> One of Its Attorneys |

Jason J. DeJonker (IL ARDC 06272128)
Aaron E. Davis (IL ARDC 06292665)
BRYAN CAVE LEIGHTON PAISNER LLP
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
Tel: 312-602-5000
Jason.DeJonker@bclplaw.com
Aaron.Davis@bclplaw.com

## CERTIFICATE OF SERVICE

I, Aaron Davis, of Bryan Cave Leighton Paisner LLP, hereby certify that I served a copy of this notice and the attached motion on March 8, 2023 by using the court's E-filing system, which will distribute the foregoing to the counsel of record on the below Service List.

/s/ Aaron Davis<br>Aaron Davis

### SERVICE LIST

- **Penelope Bach**  pnbach@bachoffices.com
  Kathryn.farris@bclplaw.com)

- **Patrick S. Layng**  USTPRegion11.ES.ECF@usdoj.gov

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: | Chapter 11 |
| CHICAGO SOUTH LOOP HOTEL OWNER, LLC, | Case No. 23-02595 |
| Debtor. | Honorable LaShonda A. Hunt |

**MOTION TO DISMISS CHAPTER 11 BANKRUPTCY CASE, OR IN THE
ALTERNATIVE, FOR APPOINTMENT OF CHAPTER 11 TRUSTEE**

Movant and secured creditor U.S. Bank National Association, as Trustee for Morgan Stanley Bank of America Merrill Lynch Trust 2013-C13, Commercial Mortgage Pass-Through Certificates, Series 2013-C13 ("Lender") and specially serviced by Rialto Capital Advisors, LLC, by and through its undersigned counsel, hereby moves for entry of an order dismissing this chapter 11 bankruptcy case, or in the alternative, appointing a chapter 11 trustee (this "Motion"). In support of this Motion, Lender relies upon the *Declaration of Nicholas Powell* (the "Powell Declaration"), which is filed concurrently herewith, and respectfully states as follows:

**Introduction**

1. Debtor Chicago South Loop Hotel Owner, LLC ("Debtor") owns and operates the South Loop Hotel located at 11 West 26th Street, Chicago, Illinois (inclusive of the improvements and personal property located therein and as further described in the Mortgage (defined below), the "Property"). Lender is the Debtor's most significant creditor and is secured by, amongst other things, a first-priority Mortgage against the Property. In response to numerous events of default, Lender commenced foreclosure proceedings and was granted a receiver for the Property. After eleven weeks of negotiations, the Lender the Debtor – through its guarantors Vickie White and Louis Dodd – agreed to a form of order appointing the receiver; however, mere hours after that

agreement, the Debtor filed its petition for bankruptcy relief in order to prevent entry of that very agreed-upon order.

2.   The instant chapter 11 case is improper. The Debtor filed its petition in bad faith, and without proper corporate authorization. Beyond both issues, the Debtor has no ability to confirm a plan of reorganization. For each of these reasons, and others described more fully herein, the case should be dismissed. In the alternative, the Debtor's pre-petition conduct and ongoing bad faith, among other grounds, provides sufficient cause to appoint a chapter 11 trustee for the Debtor's estate.

**Jurisdiction**

3.   On February 27, 2023 (the "Petition Date"), the Debtor filed a petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Illinois (this "Court").

4.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

5.   Upon information and belief, the Debtor continues to manage its affairs and operate its business as a debtor-in-possession. No official committees have been appointed in this case.

**Factual Background**

**A.   The Debtor Obtained a Loan from Lender Secured by the Property**.

6.   Prior to the Petition Date, on October 24, 2013, the Debtor executed the *Mortgage, Security Agreement and Fixture Financing Statement* for the benefit of Morgan Stanley Mortgage Capital Holdings, LLC ("Original Lender"), recorded with the Cook County Recorder of Deeds

2

on October 25, 2013, as Document No. 1329817049 (the "Mortgage"). A copy of the Mortgage is attached hereto as **Exhibit "1"**.[1]

7. Debtor executed the *Promissory Note* secured by the Mortgage, dated October 24, 2013 (with allonge attached thereto, the "Note"[2]) for the benefit of Original Lender, and in the principal amount of Six Million Eight Hundred Thousand Dollars and No Cents ($6,800,000.00) (the "Loan"). A copy of the Note is attached hereto as **Exhibit "2"**.

8. The Debtor also executed the *Assignment of Leases and Rents* dated October 24, 2013, recorded with the Cook County Recorder of Deeds on October 25, 2013 as Document No. 1329817050 ("ALR"). A copy of the ALR is attached hereto as **Exhibit "3"**. The Mortgage and ALR encumber that certain real estate, improvements and personal located at the Property.

9. Original Lender perfected its interest in the personal property by recording that certain UCC-1 Financing Statement with the Cook County Recorder of Deeds on October 25, 2013 as Document No. 1329817051 ("UCC-1"), a copy of which is attached hereto as **Exhibit "4"**.

10. The Debtor also executed that certain *Borrower's Closing Certificate* ("Closing Certificate") and that certain *Borrower's Certificate* ("Borrower's Certificate"), each dated October 24, 2013. Copies of the Closing Certificate and the Borrower's Certificate are attached hereto as **Exhibits "5"** and **"6"** respectively.

11. Original Lender assigned its interests in the Loan and related documents pursuant to certain assignment documents, copies of which are attached hereto as **Exhibit "7"**. The foregoing documents, and all other agreements and documents evidencing, securing, or otherwise relating to the Loan are collectively referred to herein as the "Loan Documents."

---

[1] All exhibits referenced in this Motion are incorporated herein as if set forth in full. The authenticity of all of the exhibits is verified by the Powell Declaration, ¶¶ 6-15.
[2] The allonge to the Note evidenced the transfer of the Promissory Note from Original Lender to Lender.

3

**B.     The Debtor's Ownership and Management Structure Is Disputed.**

**1.     The Debtor's Sole Member**

12.     According to the Debtor's *Limited Liability Company Agreement* dated as of October 23, 2012 (the "Debtor LLC Agreement"), the Debtor's sole member is Chicago South Loop Hotel, LLC ("Parent"). A copy of the Debtor LLC Agreement is attached hereto as **Exhibit "8"**. The Debtor is managed by its member (*See* Exh. 8, § 9).

13.     According to the Parent's *Operating Agreement* dated as of January 1, 2007 (the "Parent Operating Agreement"), Parent had four original members: Louis Dodd (42.5%) ("Dodd"); James White (42.5%); Floyd Mix (10%); and Jerry Cooper (5%). A copy of the Parent Operating Agreement is attached hereto as **Exhibit "9"** (the "Parent Operating Agreement").

14.     The Parent is managed by its managers. (*See* Exh. 9.) However, pursuant to § 10.9 of the Parent Operating Agreement, "the manager ***shall not perform any act*** on behalf of the limited liability company without the approval of those members who own an aggregate of more than fifty percent (50%) . . . of the total percentage interests of all members of the limited liability company."

15.     Following James White's death, Vickie White ("White") acquired his 42.5% membership interest in the Parent. Dodd and White were the sole co-managers of the Parent at the time the Debtor executed the Loan Documents in October 2013. (*See* Exhs. 5 & 6, signature pages.) All members of Parent consented to Debtor's entry into the Loan. A copy of their written consent is attached hereto as **Exhibit "10"**.

16.     Prior to July 18, 2018, Floyd Mix's and Jerry Cooper's membership interests in Parent purportedly passed by inheritance: Vivian Murphy ("Murphy") inherited the 10% interest of Floyd Mix, and Astrid Cooper ("Cooper") inherited the 5% interest of Jerry Cooper.

17.     Thereafter, as of July 18, 2018, White, Murphy and Cooper purportedly voted to amend the Parent Operating Agreement to grant them the authority to remove Dodd as co-manager. A copy of the *Amendment* to the Parent Operating Agreement dated July 17, 2018 (the "2018 Parent Amendment")[3] is attached hereto as **Exhibit "11"**. In addition, White, Murphy and Cooper resolved by written consent dated July 18, 2012 (the "Resolution" attached hereto as **Exhibit "12"**) to remove Dodd as manager. The Resolution further provides that Murphy and Cooper were to be co-managers of Parent along with White.  (*See* Exh. 12; *in contrast, see, supra* n. 3.)

18.     Dodd still maintains his 42.5% membership interest in the Parent. (*See*, Exh. 12.)

19.     As of December 30, 2020, Murphy and Cooper purportedly assigned their respective membership interests to White resulting in White allegedly holding 57.5% of the membership interests in Parent and leaving White the sole manager of Parent (the "2020 Transfers").[4] Copies of the 2020 Transfers, each dated December 30, 2020, are attached hereto as **Exhibits "13"** and **"14"**, respectively.

20.     The Parent Operating Agreement requires the affirmative vote of all members before a member can transfer its interest in the Parent. Section 13.1 provides that any purported transfer of a Parent membership interest without such a vote "shall be void and of no force and effect." (*See* Exh. 9.)  If a proposed membership transfer receives less than the unanimous written consent of all members, then such transferee "***shall have no right to participate in the***

---

[3]   The 2018 Parent Amendment may not be valid.  Section 14.1(c) of the Parent Operating Agreement provides that a member's death requires the dissolution of Parent unless at least 2 surviving members elect to continue the business by unanimous agreement. (*See* Exh. 9.) Lender has not received any information that such an agreement occurred. Furthermore, the Parent Operating Agreement does not contain a provision that automatically allows an heir to inherit management rights or membership interests (and the Illinois LLC Act does not so provide). Lender has seen no evidence prior to 2018 that recognized Murphy and Cooper as co-managers of Parent. Moreover, Section 12.2 provides that amendments to the Parent Operating Agreement require, among other things, "***the agreement of a majority in number of the managers***." (*See Id.*) Accordingly, Dodd's approval was required before the Parent Operating Agreement could be amended.

[4]   Lender has seen no evidence (in the 2020 Transfers or otherwise) that Murphy and Cooper resigned or were removed as co-managers.

5

*management of the business and the affairs of the limited liability company or to become a member*." (*Id*. (emphasis added).)

### 2. The Debtor's Purported Authorization to File Bankruptcy

21. Todd Hanson ("Hanson") signed Debtor's bankruptcy petition [Docket No. 1] (the "Petition") as "Manager" for the Debtor. The corporate consent attached to the Petition (the "Consent") identifies Hanson as "the majority member" of Parent "who is the sole owner of the [Debtor], a member-managed entity[.]" Hanson is the only signatory to the Consent. Accordingly, Hanson represents that he is the majority member of Parent (and thus Debtor's *de facto* manager).

22. Notwithstanding these disclosures – which are made under the penalty of perjury - Hanson has subsequently informed Lender that he is the sole *manager* of Parent and that White still maintains her membership interests.

23. Dodd has informed Lender that he has not approved any transfers of the Parent's membership interest in the 2020 Transfers, or to Hanson. Dodd has also not approved Hanson's appointment as manager for the Parent (or for the Debtor), nor did Dodd authorize Hanson (or the Debtor, directly or indirectly) to file the Petition.

### C. The Debtor Defaulted On the Loan, and Such Defaults Are Continuing.

24. The Debtor defaulted on the Loan and breached the Loan Documents by, among other things, failing to make its regular debt service payments, among other payment defaults. (*See* Powell Decl. ¶¶ 17-18.) The Loan Documents further clearly provide that Dodd must at all times control the Debtor's day-to-day operations. (*See* Exh. 1, §§ 8.5(a) & 10.1(d); Powell Decl. ¶ 19.)

25. Additionally, the Debtor has consistently misrepresented the Property it owns. (Powell Decl. ¶ 20.) For example, pursuant to the Mortgage, the "Property" includes the real estate, the hotel (defined as Improvements) and personal property located therein usable in connection

with the operation and occupancy of the real estate and Improvements. (*See* Exh. 1, § 1.1.) Under the Closing Certificate, the Debtor certified that *the Debtor* owns the personal property pledged in the Mortgage, including all furniture, fixtures, and equipment. (*See* Exh. 5, § 12(b).) However, on information and belief, the Parent subsequently pledged the personal property (at least) in a loan to the United States Small Business Administration (the "SBA"). (*See* Powell Decl. ¶ 21.)

26. Further, the Debtor defaulted by replacing its approved property manager, First Hospitality Group, LLC ("FHG") without Lender's prior written consent as required by the Loan Documents. (*See* Exh. 1, §§ 3.17 & 10.1(m); Powell Decl. ¶ 22.) Subsequent to the Petition Date, Hanson informed Lender that, as of the Petition Date – and without Lender's knowledge or prior written consent – Debtor again removed its replacement property manager, Premier Hospitality LLC ("Premier"), for reasons that may include mismanagement. Lender does not have any information as to the Debtor's current property manager. (*See Id.* Powell Dec.)

27. The Debtor has also defaulted by consistently failing to provide Lender with timely financial statements and other operating information. (*See* Exh. 1, §§ 3.12 & 10.1(b); Powell Decl. ¶ 23.) Attached hereto as **Exhibit "15"** are copies of a number of *Notices of Default*, beginning in July 2021 (the "Notice of Default"). (*See* Powell Decl. ¶ 27.) Debtor's failure to provide financial statements is identified in all but one of the Notices of Default. (*See* Exh. 15.)

28. The Debtor further defaulted by failing to file its tax returns on time. (*See* Exh. 1, §§ 4.2(p) & 10.1(d); Powell Decl. ¶ 24.) When Lender finally received the Debtor's 2020 and 2021 tax returns ("the Tax Returns"), Lender discovered that the Debtor's returns appear to be a merged with the Parent's return. A true and correct copy of the Tax Returns received from Debtor are attached hereto as **Exhibit "16"**. (*See Id.* Powell Decl.) The Tax Returns also revealed that the Debtor (or Parent, a consistent issue) obtained additional debt other than the Loan in violation of

7

the Loan Documents including, without limitation, a loan under the Paycheck Protection Program, an Economic Injury Disaster Loan, and a loan from an affiliate, Amber Motel, Inc. (*See* Exh. 1, §§ 4.2(h) & 10.1(d); Powell Decl. ¶ 25; Exh. 16.)

**D.    Lender Commences Foreclosure and the Debtor Filed Bankruptcy Mere Hours After Agreeing to an Order Appointing a Receiver.**

29.    On September 30, 2022, Lender commenced a foreclosure action against Debtor in the United States District Court for the Northern District of Illinois (the "District Court"), Case No. 22-05358 (the "Foreclosure Action"), and on October 3, 2022, Lender filed a motion seeking the appointment of a receiver for the Debtor and the Property (the "Receiver Motion"). (*See* Powell Decl. ¶ 26.)

30.    The Debtor filed an answer in the Foreclosure Action. Dodd also filed his Answer, (attached hereto as **Exhibit "17"**), which includes a Cross-Claim against White (the "Cross-Claim"). The Cross-Claim makes allegations regarding White's improper takeover of Debtor and seeks (i) a determination that White breached the Parent Operating Agreement; and (ii) the dissolution of Debtor. (*See* Exh. 17.)

31.    Debtor filed two objections to the Receiver Motion. Most notably, in its supplemental objection [District Court Docket No. 10] (the "Objection"), the Debtor made representations about the competent management of the Property by Premier. A copy of the Objection is attached hereto as **Exhibit "18"**.

32.    Following a contested hearing, on November 2, 2022, the District Court granted by minute entry the Receiver Motion [District Court Docket No. 41] (the "Receiver Ruling"). A copy of the Receiver Ruling is attached hereto as **Exhibit "19"**. Pursuant to the Receiver Ruling, the District Court instructed Lender to provide a draft receiver order to the District Court, and Lender complied. However, the Debtor replaced its attorney before the Court entered the draft order. On

8

December 8, 2022, the District Court gave the Debtor's new attorneys leave to file objections to Lender's draft receiver order [District Court Docket No. 42]. A copy of the December 8, 2022 minute entry is attached hereto as **Exhibit "20"**.

33. Thereafter, the parties spent approximately 11 weeks negotiating the form of the receiver order. (*See* Powell Decl. ¶ 29.) On the morning of February 27, 2023, all parties submitted an agreed order to the Court (the "Receiver Order"). Copies of the email correspondence to the District Court, and the email correspondences chronicling the parties' consent to the receiver order, are attached hereto as **Exhibit "21"**. Mere hours later, the Debtor commenced this chapter 11 case.

**Argument**

I. **The Bankruptcy Case Should Be Dismissed for Cause Under Section 1112(b) of the Bankruptcy Code**

Section 1112(b) of the Bankruptcy Code provides that the Court "*shall* convert a case under this chapter to a case under chapter 7 or *dismiss a case under this chapter*, whichever is in the best interests of creditors and the estate," upon a showing of "cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b) (emphasis added). The Court has broad discretion when considering whether to dismiss a case for cause under section 1112(b). *In re Woodbrook Assocs.*, 19 F.3d 312, 316 (7th Cir.1994). Section 1112(b)(4) provides a non-exhaustive list constituting "cause". *In re LJBV LTD*, 544 B.R. 401, 404 (Bankr. N.D. Ill. 2016).

A. **The Debtor Did Not Have Proper Authority to File for Bankruptcy.**

Courts in this district have found that a limited liability company's lack of authority to file for bankruptcy is "cause" to dismiss the company's bankruptcy case. *In re NNN 123 North Wacker, LLC*, 510 B.R. 854, 858 (Bankr. N.D. Ill. 2014); *see also Price v. Gurney*, 324 U.S. 100, 106,

(1945) (stating "[i]f the District Court finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition").

The Debtor is an Illinois limited liability company (an "LLC"); thus, Illinois state law governs. *See NNN 123 North Wacker*, 510 at 858.  In Illinois, an operating agreement supersedes the default rules under the Illinois Limited Liability Company Act (the "LLC Act") and "regulate[s] the affairs of the company and the conduct of its business and [] govern[s] relations among the members, managers, and company." *In re Minton*, Adv. No. 15–09033, 2017 WL 35431977 *3 (Bankr. C.D. Ill. January 24, 2017) (citing 805 ILCS 180/15–5(a)).

Pursuant to the Debtor LLC Agreement, the Parent is the Debtor's sole member and manager. Accordingly, the Parent Operating Agreement determines how its manager(s) will conduct the affairs of the Debtor. Pursuant to § 10.9 of the Parent Operating Agreement:

> Notwithstanding anything to the contrary contained herein, the manager shall not perform any act on behalf of the limited liability company without the approval of those members who own an aggregate of more than fifty percent (50%) . . . of the total percentage interests of all members of the limited liability company.

(*See* Exh. 9.)  Accordingly, the manager cannot perform **any act** on behalf of Parent without approval of more than 50% of the *membership interest*s of the Parent.

In this case, no single member of the Parent holds more than 50% of the membership interests. Even if Murphy and Cooper validly inherited their respective 10% and 5% membership interest (which is unclear, *see* n. 3, *supra*), they were never validly transferred to White because Dodd never approved the 2020 Transfers (nor any further or subsequent transfers from White to Hanson).[5] Section 13.1 of the Parent Operating Agreement requires the unanimous written consent

---

[5] Dodd makes many of these arguments in the Cross-Claim.  (*See* Exh. 17.)

of the members that are not proposing the transfer of their interests. (*Id*.) Murphy and Cooper proposed the 2020 Transfers of their interests. Such transfers required the consent of White *and* Dodd. The 2020 Transfers are "void and of no force and effect," (*see id*.), and White did not acquire the additional membership interests.

Thus, without the approval of Dodd, White (and if applicable, Hanson) cannot do *any act* on behalf of Parent including, without limitation, filing for bankruptcy.[6] Consequently, Debtor did not have the valid authorization of Parent to file the Petition. Parent never validly appointed Hanson to act as an agent authorized to sign the Petition on the Debtor's behalf. This lack of authority alone requires dismissal of the Debtor's chapter 11 case.

### B. The Debtor Filed Its Chapter 11 Case in Bad Faith.

Notwithstanding the foregoing, and even if the Debtor remedies the authority deficiency, the Court may dismiss the bankruptcy case if the Court determines the Debtor filed the case in bad faith. *In re Madison Hotel Associates,* 749 F.2d 410, 426 (7th Cir.1984). Courts consider the following "bad faith" factors:

> (1) whether the debtor has few or no unsecured creditors . . .; (3) whether the pre-petition conduct of the debtor has been improper; (4) whether the petition effectively allows the debtor to evade court orders . . .; (6) whether the petition was filed on the eve of foreclosure; (7) whether the foreclosed property is the sole or major asset of the debtor . . .; (9) whether there is no possibility of reorganization . . .; (12) whether reorganization essentially involves the resolution of a two-party dispute; (13) whether a corporate debtor was formed and received title to its major assets immediately before the petition and; (14) whether the debtor filed solely to create the automatic stay.

*LJBV*, 544 B.R. at 404-05 (Bankr. N.D. Ill. 2016); *In re Tekena USA, LLC*, 419 B.R. 341, 345–46 (Bankr. N.D. Ill. 2009); *In re Grieshop*, 63 B.R. 657, 663 (Bankr. N.D. Ind.1986).

---

[6] By the same reasoning, White cannot appoint Hanson as manager of Parent without Dodd's approval.

In this case, the Debtor is a single purpose entity with its only material asset being the Property. The Property is already subject to Lender's Foreclosure Action, and the Debtor has few other creditors. *See LJBV*, 544 B.R. at 404-05.

More acutely, the Debtor's singular purpose for filing bankruptcy was to avoid entry of the Receiver Order. *See Id.* Indeed, after painstaking negotiations over 11 weeks between multiple parties,[7] the Debtor *agreed* to the form and substance of the Receiver Order. (*See* Exh. 21.) Within hours of its agreement, Debtor apparently changed its mind, Parent changed its management (and/or membership structure) and Debtor ran to bankruptcy court with a bare-bones bankruptcy petition specifically to trigger the automatic stay to prevent entry of the Receiver Order. *See LJBV*, 544 B.R. 404-05 (stating that a bad faith factor is "whether the debtor filed solely to create the automatic stay"). The bankruptcy filing came immediately after Hanson purportedly obtained his interest (position) in Parent. *See Id*. (stating a bad faith factor is "whether a corporate debtor was formed and received title to its major assets immediately before the petition").

Further evidence of bad faith is established by the fact that the Debtor cannot confirm a plan of reorganization. To be sure, until the question of authority is resolved, the Debtor cannot plausibly put forward a plan or sell the Property. If Debtor lacked the authority to get into bankruptcy, it necessarily lacks the authority to get out of bankruptcy. *See Id*. (stating one of the bad faith factors is if "there is no possibility of reorganization").

The many examples of Debtor's improper pre-petition conduct also weigh in favor of a finding that the Debtor's Petition was filed in bad faith. *Id*. Among them:

---

[7] For the avoidance of doubt, the receiver order had the agreement of Lender, Debtor, and the two undisputed members of Parent, Dodd and White, when it was transmitted to the District Court. (*See* Exh. 21.)

  a. At the center of Debtor's improper conduct is Parent's ownership turmoil as described herein with all of its dubious transfers of membership interests and management authority. (*See, supra* Factual Background § (B) & Argument § I(A).)

  b. The Debtor (or Parent, or both) does not know what its assets are: or worse, the entities know what their assets are, but blur the lines of asset ownership between Debtor and Parent to suit their purposes to, among other things, take on additional indebtedness. As a result of the Debtor's (or Parent's, or both) improper conduct, there appears to be competing first position security interests on the Debtor's fixtures, furnishings and equipment. (*See* Powell Decl. ¶¶ 20-21.)

  c. Debtor's use of unapproved property management companies threatens the Property. After representing to the District Court that Premier was managing the Property "in a first-class manner" (*see* Exh. 18, pp. 2, 4), just months later, Debtor replaced Premier for, among other things, mismanagement. The Debtor previously replaced FHG without notice and prior written consent of Lender. (*See* Powell Decl. ¶ 22.) Lender has been unable to ascertain how the unapproved management company(ies) has damaged Lender's collateral.  Between the Debtor and its management company, (i) Lender has not received financial and other operating information, (ii) does not fully know the extent to which Debtor's Property has been pledged, and/or accounts commingled with Parent and other affiliated entities of Parent and Debtor, and (iii) does not know of the current condition of the Property.

  d. The Debtor's mismanagement includes the late filed tax returns. (*See* Exh. 16.) Debtor risks causing an IRS lien to be filed against the Property.  It is also an example of either financial negligence of the Debtor's business affairs, or financial disorder.

Although not only a two-party dispute, the issues between Debtor and Lender, and Dodd and White, are already the subject of the District Court case.  The Dodd/White issue is not stayed.

Accordingly, the District Court and Bankruptcy Court risk duplicitous efforts and contrasting findings.

Collectively, these factors demonstrate that Debtor filed this bankruptcy case in bad faith. The Court should therefore dismiss the bankruptcy case.

**II.     In the Alternative, the Court Should Appoint a Chapter 11 Trustee Pursuant To Section 1104(a) of the Bankruptcy Code.**

Section 1104(a) of the Bankruptcy Code provides that ". . . the court shall order the appointment of a trustee (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case . . .; or (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate . . .." Section 1104(a)(2) is designed to be a "flexible standard." *In re Woodlawn Comm. Dev. Corp.*, 613 B.R. 671, 688 (Bankr. N.D. IL 2020).

This Court may appoint a chapter 11 trustee based solely on the creditor's lack of confidence in the Debtor's ability to effectively administer the estate. *Id; see also In re Marvel Entm't Group, Inc.*, 140 F.3d 463, 474 (3d Cir. 1998) (animosity between the creditors and the debtor necessitated the appointment of a trustee); *In re Eurospark Indus., Inc.*, 424 B.R. 621, 630 (Bankr. E.D.N.Y. 2010) (a "lack of creditor confidence" found where the creditors with the greatest economic interest supported the motion to appoint a trustee).

Even if the Court determines that the above factors weigh against dismissal of the case, Lender has demonstrated "cause" to appoint a chapter 11 trustee pursuant to section 1104(a)(1) of the Bankruptcy Code, including for the dishonesty, incompetence and gross mismanagement of the affairs of the Debtor before the commencement of the bankruptcy case. (*See, supra*, pp. 9-14.)

Further, Lender, a secured creditor and the creditor with the greatest economic interest, has no confidence in Debtor's ability to administer the estate. Lender is not even sure what person(s)

has the authority to make decisions on behalf of the Debtor. The Debtor does not honor its agreements.[8] The Debtor does not consult with Lender about the property managers responsible for managing and safeguarding the Property. Lender does not trust that the Debtor will utilize a property manager that will properly manage the Property consistent with the Debtor's duty under the Loan Documents and as an estate fiduciary. Indeed, the Debtor passes around its property between the Debtor and the Parent with a complete disregard for ownership rights, security interests, and other appropriate corporate formalities. If this case is going to continue in bankruptcy, a chapter 11 trustee is a necessity.

WHEREFORE, for the foregoing reasons, U.S. Bank National Association, as Trustee for Morgan Stanley Bank of America Merrill Lynch Trust 2013-C13, Commercial Mortgage Pass-Through Certificates, Series 2013-C13 respectfully requests that this Court enter an order dismissing this chapter 11 case for cause, or in the alternative appointing a chapter 11 trustee; and granting such other relief as is just and equitable under the circumstances.

Dated: March 8, 2023

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR MORGAN STANLEY BANK OF AMERICA MERRILL LYNCH TRUST 2013-C13, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2013-C13, by and through its special servicer, RIALTO CAPITAL ADVISORS, LLC

By:   /s/ Aaron Davis
     One of Its Attorneys

Jason J. DeJonker (IL ARDC 06272128)
Aaron E. Davis (IL ARDC 06292665)
BRYAN CAVE LEIGHTON PAISNER LLP
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
Tel: 312-602-5000
Jason.DeJonker@bclplaw.com
Aaron.Davis@bclplaw.com

---

[8]   As a companion to this point, Debtor has now changed attorneys four times since December 2021.

15

USA.606538295.5/ABY