# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE: | Chapter 11 |
| CHICAGO SOUTH LOOP HOTEL OWNER, LLC, | Case No. 22-02595 |
| Debtor. | Honorable Deborah L. Thorne |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on Thursday, May 4, 2023, at 9:00 a.m., we shall appear before the Honorable Judge Deborah L. Thorne, or any judge sitting in her stead, **either** in courtroom 682 of the Dirksen Federal Building, 219 South Dearborn Street, Chicago, Illinois 60604, or electronically as described below, and present SECURED LENDER'S MOTION TO PROHIBIT NONCONSENSUAL, UNAUTHORIZED USE OF CASH COLLATERAL a copy of which is attached.

**All parties in interest, including the movant, may appear for the presentment of the motion either in person or electronically using Zoom for Government.**

**To appear by video**, use this link: https://www.zoomgov.com.  Then enter the meeting ID and passcode.

**To appear by telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID.

**Meeting ID and passcode**. The meeting ID for this hearing is **160 9362 1728** – no password required.  The meeting ID and further information can also be found on Judge Thorne's web page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of

Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without calling it.

|  |  |
|---|---|
| Dated: April 13, 2023 | U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR MORGAN STANLEY BANK OF AMERICA MERRILL LYNCH TRUST 2013-C13, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2013-C13, by and through its special servicer, RIALTO CAPITAL ADVISORS, LLC |
|  | By:  /s/ Aaron Davis  <br>   One of Its Attorneys |

Jason J. DeJonker (IL ARDC 06272128)
Aaron E. Davis (IL ARDC 06292665)
BRYAN CAVE LEIGHTON PAISNER LLP
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
Tel: 312-602-5000
Jason.DeJonker@bclplaw.com
Aaron.Davis@bclplaw.com

## CERTIFICATE OF SERVICE

I, Aaron Davis, of Bryan Cave Leighton Paisner LLP, hereby certify that I served a copy of this notice and the attached motion on each entity shown on the attached list at the address shown and by the method indicated on the list on April 13, 2023.

/s/ Aaron Davis
Aaron Davis

## SERVICE LIST

Via the Court's electronic notice system:

- **Penelope Bach**        pnbach@bachoffices.com
- **Paul Bach**            paul@bachoffices.com,
- **Patrick S. Layng**     USTPRegion11.ES.ECF@usdoj.gov
- **Michael Jameson**      mjameson@mpslaw.com
- **Jason Metnick**        jmetnick@mpslaw.com

Via regular U.S. Mail on the foregoing:

| | |
|---|---|
| Chicago South Loop Hotel Owner, LLC<br>105 W. Madison<br>Suite 1500<br>Chicago, IL 60602-4602 | Peoples Gas Light & Coke Company<br>c/o Bankruptcy Department<br>130 East Randolph St., Suite 200<br>Chicago, IL 60602 |
| ComEd<br>Customer Correspondence Group<br>PO Box 87522<br>Chicago, IL 60680-0522 | Commonwealth Edison Company<br>Bankruptcy Department<br>1919 Swift Drive<br>Oakbrook, IL 60523-1502 |
| D. Park Smith<br>Law Office of D. Park Smith<br>250 Cherry Springs Road, Suite 200<br>Hunt, TX 78024-3010 | TK Elevator Corp.<br>Law Office of D. Park Smith<br>250 Cherry Springs Road,<br>Hunt TX 78024-3010 |
| SBC Waste Solutions, Inc.<br>PO Box 7410422<br>Chicago, IL 60674-0422 | AT&T: Bankruptcy<br>P.O. Box 769<br>Arlington, TX 76004-0769 |

Allbridge
PO Box 638671
Indianapolis, IN 46283

Vickie White
c/o Law Offices of J. Mark Lukanich
7270 W. College Drm Suite 101
Palos Heights, IL 60463-1178

Department of Business Affairs
City Hall Room 800
121 N. LaSalle St. Chicago, IL 60602

Hunt Insurance Agency
12000 S. Harlem
Palos Heights, IL 60463

Lauzen Accounting
27W430 Warrenville Rd
Warrenville, IL 60555

Pinnacle Communications
19821 Executive Park Cr.
Germantown, MD 20874

SBC Waste Solutions, Inc.
PO Box 7410422
Chicago, IL 60674-0422

Small Business Administration
801 Tom Marton Dr
Suite 120
Birmingham, AL 35211

TA Connections
PO Box 74008563
Chicago, IL 60674

Theodore Schmidt
111 W. Washington St. Suite 1300
Chicago, IL 60602-3466

City of Chicago - Dept, of Water
121 N. LaSalle
Room 107
Chicago, IL 60602

Fox Valley Fire and Safety
2730 Pinnavle Dr.
Elgin, IL 60124

Illinois Department of Revenue
Bankruptcy Unit, PO Box 19035
Springfield, IL 62794-9035

McCarthy Burgess & Wolfe
26000 Cannon Road
Bedford, OH 44146

SBC Waste
PO Box 7410422
Chicago, IL 60674

Siegel & Callahan
1 N Franklin
Chicago, IL 60606

Wyndham Hotels
c/o RA Corporate Creations Network
350 S. Northwest Highway, #300
Park Ridge, IL 60068

Louis P. Dodd
6306 N. Cicero
Chicago, IL 60646-4422

USA.606790675.1/ABY

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE:<br><br>CHICAGO SOUTH LOOP HOTEL OWNER, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 23-02595<br><br>Honorable Deborah L. Thorne |

**SECURED LENDER'S MOTION TO PROHIBIT**
**NONCONSENSUAL, UNAUTHORIZED USE OF CASH COLLATERAL**

U.S. Bank National Association, as Trustee for Morgan Stanley Bank of America Merrill Lynch Trust 2013-C13, Commercial Mortgage Pass-Through Certificates, Series 2013-C13 ("Lender"), as specially serviced by Rialto Capital Advisors, LLC, by and through its undersigned counsel, hereby moves this Court to prohibit the continued unauthorized, nonconsensual use of cash collateral by South Loop Hotel Owner, LLC ("Debtor"). In support of the Motion, Lender respectfully states as follows:

**INTRODUCTION**

The Bankruptcy Code is clear that Debtor may only use cash collateral if any entity with an interest consents to the use of cash collateral. Otherwise, Debtor must obtain approval of this Court and its authorization to use cash collateral after notice and a hearing. Lender does not consent to the use of cash collateral. ***Despite Lender's objection to use of cash collateral (Dkt. No. 30), Debtor has not sought consent to such cash collateral, and despite this case having been pending for over 30 days, Debtor has not sought authority from this Court to use cash collateral***. Accordingly, Lender moves the Court to compel Debtor to stop using cash collateral.

**BACKGROUND**

1. On February 27, 2023 (the "Petition Date"), Debtor filed a petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Illinois (this "Court").

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (M).

3. Debtor continues to manage its affairs and operate its business as a debtor-in-possession. No official committees have been appointed in this case.

4. Prior to the Petition Date, on October 24, 2013, Debtor executed the *Mortgage, Security Agreement and Fixture Financing Statement* for the benefit of Morgan Stanley Mortgage Capital Holdings, LLC, the predecessor in interest to Lender ("Original Lender"), recorded with the Cook County Recorder of Deeds on October 25, 2013, as Document No. 1329817049 (the "Mortgage"). A copy of the Mortgage is attached hereto as **Exhibit "1"**.[1]

5. Debtor executed the *Promissory Note* secured by the Mortgage, dated October 24, 2013 (with allonge attached thereto, the "Note"[2]) for the benefit of Original Lender, in the principal amount of Six Million Eight Hundred Thousand Dollars and No Cents ($6,800,000.00) (the "Loan"). A copy of the Note is attached hereto as **Exhibit "2"**.

6. Debtor also executed the *Assignment of Leases and Rents* dated October 24, 2013, recorded with the Cook County Recorder of Deeds on October 25, 2013 as Document No.

---

[1] All exhibits referenced in this Motion are incorporated herein as if set forth in full.

[2] The allonge to the Note evidenced the transfer of the Promissory Note from Original Lender to Lender.

2

1329817050 ("ALR"). A copy of the ALR is attached hereto as **Exhibit "3"**. The Mortgage and ALR encumber that certain real estate, improvements and personal located at the Property.

7. The Mortgage and ALR encumber certain real and personal property commonly known as 11 West 26th Street, Chicago, Illinois 60616 (as more particularly described in the Mortgage, the "Property").

8. The Property is more particularly described in Section 1.1 of the Mortgage and Assignment of Rents, and includes, among other things, cash collateral.

9. Original Lender perfected its interest in the personal property by recording that certain UCC-1 Financing Statement with the Cook County Recorder of Deeds on October 25, 2013 as Document No. 1329817051 ("UCC-1"), a copy of which is attached hereto as **Exhibit "4"**.

10. Debtor also executed that certain Cash Management Agreement dated October 25, 2013, executed by Debtor for the benefit of Original Lender, a copy of which is attached hereto as **Exhibit "5"**.

11. Original Lender assigned its interests in the Loan and related documents pursuant to certain assignment documents, copies of which are attached hereto as **Exhibit "6"**. The foregoing documents, and all other agreements and documents evidencing, securing, or otherwise relating to the Loan are collectively referred to herein as the "Loan Documents."

12. Debtor also executed that certain *Borrower's Closing Certificate* ("Closing Certificate") and that certain *Borrower's Certificate* ("Borrower's Certificate"), each dated October 24, 2013. Copies of the Closing Certificate and the Borrower's Certificate are attached hereto as **Exhibits "7"** and **"8"** respectively.

13. Pursuant to Section 12(b) of the Closing Certificate, Debtor represented and warranted that Debtor owned all "personal property described as collateral in the Loan

3

Documents" and that "[a]ll such collateral are subject to the lien of the Security Instrument and the other Loan Documents."

14. Pursuant to the Borrower's Certificate, Debtor certified that the financial statements of Debtor attached thereto were true and accurate copies of such statements, such statement consisting of the operations of the hotel.

15. Debtor committed several defaults under the Loan Documents, including:

- Debtor's failure to make all payments due and payable to Lender in accordance with Articles IV and V of the Note and § 3.1 of the Mortgage by not paying default interests and late fees and other costs associated with the late payment of the monthly installment payments in December 2019, January and March 2020, and February, March, April, May, June, July, August, September, October, November and December 2021, which failures constitutes an Event of Default pursuant to, among other provisions, § 10.1(a) of the Mortgage;

- Debtor's failure to provide financial statements as requested, and as required by, among other provisions, § 3.12 of the Mortgage, to Lender, each failure of which constitutes an Event of Default pursuant to, among other provisions, § 10.1(b) of the Mortgage;

- Debtor's failure to obtain Lender's consent to the replacement of the Property Manager in violation of § 3.17 of the Mortgage, which constitutes an Event of Default pursuant to, among other provisions, § 10.1(m) of the Mortgage;

- Debtor's failure to at all times have Louis Dodd control the day-to-day operations and management of Debtor and the Property, in violation of § 8.5(a) of the Mortgage which constitutes an Event of Default pursuant to, among other provisions, § 10.1(d) of the Mortgage;

- Debtor's failure to obtain the Lender's consent for unpermitted debt in the amount of approximately $1.2MM (i.e., shareholder loans) to encumber the Property in violation of § 8.1 of the Mortgage, which constitutes an Event of Default pursuant to, among other provisions, § 10.1(h) of the Mortgage;

- Debtor's failure to timely file its federal and state tax returns in violation of § 4.2(p) of the Mortgage which is an Event of Default pursuant to § 10.1(d) of the Mortgage;

- Debtor's failure to comply with the Cash Management Agreement, which failure to comply is a breach under Paragraph 5 of the Cash Management Agreement and an Event of Default pursuant to § 10.1(m) of the Mortgage;

4

- Debtor's acceptance of additional debt other than the Loan, including, without limitation, a loan under the Paycheck Protection Program, an Economic Injury Disaster Loan, a loan from an affiliate, Amber Motel, Inc., and a loan from the United States Small Business association, each of which is a violation of § 4.2(h) of the Mortgage and an Event of Default pursuant to §10.1(d) of the Mortgage;

- The failure of the guarantors under the Loan to have maintained, or prove that they are maintaining, a minimum fifty percent (50%) aggregate net worth and, at minimum, fifty percent (50%) aggregate liquidity, which is a default pursuant to, among other provisions, Section 22 of the operative Guaranty and an Event of Default pursuant to § 10.1(j) of the Mortgage;

- Debtor's failure to prevent a lien to be filed against the Property, which is an Event of Default pursuant to § 10.1(h) of the Mortgage;

- Debtor's entry in a franchise agreement with Wyndham hotels in an effort to re-brand the Property without Lender's prior written consent in violation of § 3.21 of the Mortgage, which is an Event of Default pursuant to § 10.1(m) of the Mortgage;

- Debtor's failure to pay a Hotel Operators Occupation tax in violation of § 3.4 of the Mortgage, which is an Event of Default pursuant to § 10.1(b) of the Mortgage; and

- The purported transfer of the membership interest of Debtor's parent company, Chicago South Loop Hotel, LLC without complying with the requirements of § 8.5 of the Mortgage, which is an Event of Default pursuant to § 10.1(d) of the Mortgage.

16. Lender provided notice to Debtor on numerous occasions with respect to these events of default. Copies of the Notices of Default are attached hereto as **Group Exhibit "9"**.

17. Lender provided Debtor with over 14 months to cure the various defaults. Only after this period, on September 30, 2022, Lender commenced a foreclosure action against Debtor in the United States District Court for the Northern District of Illinois (the "District Court"), Case No. 22-05358 (the "Foreclosure Action"). On November 2, 2022, the District Court granted Lender's motion to appoint Jeffrey Kolessar as receiver (the "Receiver").

5

18. Since the filing of the Foreclosure Action, Debtor has failed to make any payments of principal and interest since the payment due on December, 2022.[3]. Debtor has also failed to cure the numerous events of default listed above.

19. On the eve of commencing a consensual sale process via the Receiver (one as to which Debtor along with its prior ownership agreed), Debtor filed this bankruptcy case. Debtor did not provide any advance notice to Lender, and in fact fired its prior counsel (with whom Lender had negotiated a consensual settlement) on the eve of the bankruptcy filing.

20. On March 8, 2023, Lender moved to dismiss the bankruptcy case or have a Chapter 11 Trustee appointed. [Dkt. No. 9] ("the "Motion to Dismiss").

## ARGUMENT

21. Section 363(c)(2) of the Bankruptcy Code provides that

> The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—
>
> (A) each entity that has an interest in such cash collateral consents; or
>
> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

22. Cash collateral includes inventory, accounts receivable, cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired. 11 U.S.C. § 363. Under Bankruptcy Code section 363, cash and cash equivalents subject to a security interest or to other interests are cash collateral. *See, e.g.,* 3 Lawrence P. King, Collier on Bankruptcy ¶ 363.093 (15th Ed. 2004). Cash collateral also includes proceeds, products, or profits of property in which the entity has a security interest. *See Id*. at ¶ 363.093[3].

---

[3] Rialto applied funds held in reserves to pay the debt service payment for January 2023.

23.     Cash Collateral is given this type of special treatment by the Bankruptcy Code because cash collateral "is most likely to be consumed during the reorganization process and is at times subject to change on an almost daily basis." *In re EES Lambert Assocs.*, 62 B.R. 328, 343 (Bankr. N.D. Ill. 1986).

24.     Lender, under its loan documents and state law, asserts a security interest in all past, present, and future revenues and rents related to the Property and its operations. *See* 11 U.S.C. § 552(b); *Butner v. United States*, 440 U.S. 48 (1979). Here, it is without question that (1) Lender possesses a security interest in all of the assets of Debtor, including the cash collateral resulting from Debtor's operations, and (2) Debtor's use of Cash Collateral requires either the consent of Lender or authority granted by this Court under Bankruptcy Code section 362(c)(2).

25.     Lender does not consent to Debtor's use of Cash Collateral. In the absence of the creditor's consent, Debtor may use cash collateral only with the approval of the court that will normally require adequate protection for the holder of the adverse interest. 11 U.S.C. § 363(c)(2)(B), *see, e.g., In re Goode*, 235 B.R. 584 (Bankr. E.D. Tx. 1999) (debtors' need for funds could not substitute for adequate protection). Debtor has not made such a request. Instead, Debtor has misrepresented to the Court the ownership of the operating hotel. In Debtor's schedules, Debtor includes the going concern of the hotel in its valuation of the Property, and includes the personal property of the hotel.

26.     More importantly, Debtor represented and warranted that it owned the operations of the hotel and clearly intended to pledge such property to Lender in order to secure the Loan. (*See* Exh. 7 & 8.)

27.     Additionally, the Mortgage and Assignment of Rents pledge the following:

7

- "Land" defined in Section 1.1(a) of the Mortgage as the real property described with more particularity in Exhibit A to the Mortgage, commonly known as 11 West 26th Street, Chicago, Illinois;

- "Additional Land" defined in Section 1.1(b) of the Mortgage as "[a]ll additional lands, estates and development rights hereafter acquired by Borrower for use in connection with the Land;"

- "Improvements" defined in Section 1.1(c) of the Mortgage as "[t]he buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter erected or located on the Land;"

- "Fixtures and Personal Property" including cash collateral defined in Section 1.1(e) as all of the tangible personal property as well as all "other property of every kind and nature whatsoever owned by Borrower, or in which Borrower has or shall have an interest, now or hereafter located upon the Land and the Improvements, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Land and the Improvements," and "the right, title and interest of Borrower in and to any of the Personal Property which may be subject to any security interests, as defined in the Uniform Commercial Code, and all proceeds and products of the above;" and

- "Rents" defined in Section 1.1(c) of the Assignment of Rents, among other things as "all revenues and credit card receipts collected from guest rooms, restaurants, bars, meeting rooms, banquet rooms and recreational facilities, all receivables, customer obligations, installment payment obligations and other obligations now existing or hereafter arising or created out of the sale, lease, sublease, license, concession or other grant of the right of the use and occupancy of property or rendering of services by Borrower or any operator or manager of the hotel or the commercial space located in the Improvements or acquired from others (including, without limitation, from the rental of any office space, retail space, guest rooms or other space, halls, stores, and offices, and deposits securing reservations of such space)."

In other words, the Property includes all property generated from the real estate and the hotel.

28. Accordingly, Debtor cannot avoid its obligation to seek the use of cash collateral by now saying the cash flows from property that is not Debtor's property. Lender objects to Debtor's use of cash for several reasons.

8

29. *First*, as discussed in Lender's Motion to Dismiss, Lender is uncertain who is operating Debtor and who is managing the Property. At minimum, Lender knows the current operator of Debtor is not a person or entity approved under the Loan Documents.

30. *Second,* even prior to Debtor's bankruptcy filing, Debtor consistently defaulted under the Loan Documents by failing to provide to Lender the financial information about the operations of Debtor as required by the Loan Documents. Lender has not seen an operations budget from Debtor in months. Moreover, Debtor has failed to make any payments of principal and interest to Lender since December, 2022.[4]

31. *Third*, Lender has been informed, and indeed Debtor has mentioned in its schedules, that persons associated with Debtor have taken funds from Debtor.

32. *Fourth*, Debtor has been mismanaging its operations and business as described in the Motion to Dismiss.

33. To the extent that Debtor properly seeks approval to use cash collateral, Debtor needs to provide Lender with adequate protection under Bankruptcy Code sections 363(e) and 364(d)(1)(B). "The requirement of adequate protection in Section 363(e) is mandatory." 3 Collier at ¶ 363.05[2]. The burden of demonstrating adequate protection falls on Debtor. 11 U.S.C. § 363(o). The purpose in providing adequate protection for a creditor is to protect an entity's interest in property against a decrease in value and afford it the benefit of its bargain. *In re Koger*, No. 12-31409, 2013 WL 4666738 *3 (Bankr. S.D. IL August 30, 2013); *see also In re Cash Currency Exchange, Inc.*, 52 B.R. 577, 580 (Bankr. N.D. IL 1985) (stating the statutory protection provided by the adequate protection provision extends to each bargained-for property right contained in a

---

[4] Rialto applied funds held in reserves to pay the debt service payment for January 2023.

9

security instrument so as not to deprive the secured creditor of the benefit of their bargain.) Provision of adequate protection is a condition precedent to the use of cash collateral.

34. Bankruptcy Code section 361 describes three forms that adequate protection may take, including periodic cash payments, an additional or replacement lien, or such other relief resulting in the indubitable equivalent of the creditor's interest in the property. *See* 11 U.S.C. § 361(c)(1)-(3). Debtor needs to provide such relief in favor of Lender. Moreover, Debtor cannot pay its professionals from cash collateral. With respect to the payment of professional fees, this Court can only allow Debtor to pay administrative expenses, like the professional fees, if the interest secured by the collateral is adequately protected. *Wolf v. FirstMerit Bank, N.A.*, 535 B.R. 772, 781 (Bankr. N.D. Ill. 2015).

WHEREFORE, for the foregoing reasons, Lender objects to Debtor's use of Cash Collateral.

Dated: April 13, 2023

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR MORGAN STANLEY BANK OF AMERICA MERRILL LYNCH TRUST 2013-C13, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2013-C13, by and through its special servicer, RIALTO CAPITAL ADVISORS, LLC

By: /s/ Aaron Davis
One of Its Attorneys

Jason J. DeJonker (IL ARDC 06272128)
Aaron E. Davis (IL ARDC 06292665)
BRYAN CAVE LEIGHTON PAISNER LLP
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
Tel: 312-602-5000
Jason.DeJonker@bclplaw.com
Aaron.Davis@bclplaw.com